Plaintiffs, Susie Lee Daniel Thomaston and Jane Daniel Sims, initiated this cause on August 29, 1980, against certain of the heirs of Leila Daniel Dirickson, seeking the reformation of a deed due to alleged inaccuracies in the legal description of property *Page 83 
conveyed thereby. Defendants, Mary D. Davis, Doris D. Stanford, G.W. Dirickson, Ethel Conrad, Hattie Kirk, Ross Daniel, Jr., Delilah Deavers, Gail Cowan, and Lana Jean Swatek, filed a motion to dismiss Plaintiffs' cause, which was denied.
Defendants next answered Plaintiffs' allegations, denying the material averments of the complaint, and raising the special defenses of res judicata, statute of limitations, laches, and lack of mutuality of mistake among the parties in the preparation and execution of the deed.
The trial court, without a jury, ordered the deed reformed. We affirm.
 FACTS
Plaintiffs and Defendants are all of the heirs of Leila Daniel Dirickson. On November 7, 1963, Mrs. Dirickson executed a warranty deed, reserving to herself a life estate in the property, conveying to her son, I.W. Daniel, a life interest in certain realty, and leaving the remainder to her grandchildren, the Plaintiffs (both the grantor and her son are now dead). The deed purported to convey some 176 acres, being part of approximately 300 acres deeded to Leila Dirickson by W.W. Bowman on December 2, 1924.
The deed sought to be reformed contains the following legal description of the property therein conveyed:
 "The NE 1/4 of Section 35, Township 17, Range 23, and that portion of the west 1/2 of the NW 1/4 of the NW 1/4 of Section 34, Township 17, Range 25, Macon County, Alabama containing 176 acres more or less."
One of the alleged misdescriptions in the deed sought to be reformed is "The NE 1/2 of Section 35, Township 17, Range 23." Plaintiff's exhibits 22 through 24, the 1963, 1964, and 1980 Macon County tax assessment records, show that this exact property is owned by persons other than the parties to this case and lies some 11 miles west of the property Mrs. Dirickson owned.[1] Plaintiff's prayer for reformation sought to substitute "Section 34" for "Section 35" as to the larger tract (described as the "NE 1/4 of Section 35"); to substitute "Section 35" for "Section 34" as to the smaller tract (described as "that portion of the west 1/2 of the NW 1/4 of the NW 1/4 of Section 34"); and to substitute "Range 25" for "Range 23" in the description of the larger tract.
In addition to their oral testimony, Plaintiffs introduced at trial an official map of Macon County, as compiled by the Alabama State Highway Department. The map was received by the court with the limitation that anything written thereon by Plaintiffs' counsel was not binding and would not be considered as evidence in the proceedings.
 ORE TENUS STANDARD OF REVIEW
The trial judge, sitting without a jury, determined from the evidence adduced before him that the deed in question was rightly due to be reformed.
A strong presumption as to the correctness of the trial court's findings exists on appeal, and these findings should not be disturbed unless they are unsupported by the evidence or found to be clearly erroneous and against the great weight of the evidence. Cougar Mining Co. v. Mineral Land MiningConsultants, Inc., 392 So.2d 1177 (Ala. 1981); Raidt v. Crane,342 So.2d 358 (Ala. 1977); Adams Supply Co. v. United StatesFidelity Guaranty Co., 269 Ala. 171, 176, 111 So.2d 906
(1959). See, also, Moore v. Lovelace, 413 So.2d 1100 (Ala. 1982).
Implicitly, but necessarily, the trial court found that the grantor intended to convey to her two grandchildren a remainder interest in the only property which she owned at the time of the conveyance — her homeplace. Quite obviously, she could not reserve unto herself a life estate in property she did not own, nor could she convey property she did not own.
Pursuant to the ore tenus standard of review, we find ample evidence to support the trial court's factual findings; *Page 84 
consequently, we afford credence to the trial judge's determination that reformation of the deed was appropriate.
 STATUTE OF LIMITATIONS AND LACHES
The statute of limitations on a party's right to bring an action to have a deed reformed does not begin to run until the party's right of possession or title is questioned. Ammons v.Ammons, 253 Ala. 82, 42 So.2d 776 (1949).
Under the deed in question, and at the time of its original execution, Plaintiffs retained only a remainder interest in the real estate. As such, their rights to possession did not arise until the death of Leila Dirickson, the life tenant, on June 5, 1980. Plaintiffs instituted this cause seeking reformation within three months thereafter, on August 29, 1980.
It is undisputed that both Plaintiffs learned for the first time in 1972 that the deed in question contained a misdescription, such knowledge coming from their grandmother, Leila Dirickson. In 1978, Mary D. Davis and Doris D. Stanford suggested to Plaintiffs that they reconvey their property holdings to their grandmother so that the land might thereafter be sold and the proceeds used for her care and well-being. This action, contra to showing that Plaintiffs' title was "questioned," shows that, in fact, it was "recognized" in 1978. Applying the rule in Ammons, supra, to these facts, we are unable to accept Defendants' suggestion that the statute of limitations should act as a bar to Plaintiffs' cause of action.
Defendants next assert that should their statute of limitations defense not succeed, then Plaintiffs' action was barred by the doctrine of laches. We disagree. Lapse of time alone does not establish laches. Ellis v. Stickney, 253 Ala. 86, 42 So.2d 779 (1949). To be affected by laches, the delay should have been with notice of the existence of the right, resulting in disadvantage to another, or should have operated to bring about changes of conditions and circumstances of which there can no longer be a safe determination of the controversy.Merrill v. Merrill, 260 Ala. 408, 71 So.2d 44 (1954).
While it may be open to speculation as to why Plaintiffs first prosecuted their claim in 1980, this eight-year delay, after their knowledge of the error, does not bar the claim for laches under the instant facts. As Plaintiffs were not entitled to actual possession of the property until the death of the life tenant, we are unpersuaded that it was incumbent upon them to initiate earlier proceedings seeking to reform alleged errors in the deed's legal description. (Indeed, in the absence of a challenge to Plaintiffs' title, the only delay was between June 5, 1980 — the date of the life tenant's death — and August 29, 1980 — the date of the filing of the suit.) SeeMerrill, supra, in which a lapse of almost twenty years in filing suit to reform a deed, standing alone, was held not to establish laches. See, also, Duncan v. Johnson, 338 So.2d 1243
(Ala. 1976).
 THE COUNTY MAP AS EVIDENCE
Defendants' counsel gave no grounds for his objection to the map's introduction, except to say, "We have no objection to the Court having a map. We object to it being introduced." Under ARCP 44 (g), historical works, books of science or art, and published maps or charts, when made by persons indifferent between the parties, are prima facie evidence of facts of general notoriety and interest. Moreover, it is apparent from the record that the trial judge made only very generalized use of the map in assisting him in placing in perspective the location of the property actually described in the deed as compared to the location of the property owned by the grantor. In this we find no prejudicial error.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] We note that counsel in brief correctly point out that "Range 23" is also in error, accounting for the 11-mile distance between the property as actually described and the Dirickson property. *Page 85